## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

App Dynamic ehf,
    Smaratorg 3
    201 Kópavogur
    Iceland,

        Plaintiff,

    v.

Erling Ormar Vignisson,
    Kistavägen 9G
    19267 Sollentuna
    Sweden,

        Defendant.

Civil Action No. _____

DEMAND FOR JURY TRIAL

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff App Dynamic ehf ("Plaintiff") files this complaint for declaratory and injunctive relief against Defendant Erling Ormar Vignisson ("Defendant") (collectively, the "Parties") in the above-captioned action, alleging as follows:

1.    This case arises from Defendant's fraudulent registration of a U.S. Copyright, Registration No. VA 1-805-490, covering the user interface of Plaintiff's software application, Remote Jr. starting with version 2.2; attempted assertion of that copyright over Plaintiff's software application, Remote HD version 4.0 and later; and Defendant's copyright infringement lawsuit filed in the District Court of Reykjaness, Iceland.

2.    Plaintiff brings this lawsuit to obtain a declaration that Plaintiff is the proper copyright owner of the works claimed in U.S. Copyright Registration No. VA 1-805-490, that U.S. Copyright Registration No. VA 1-805-490 is invalid, and that Defendant fraudulently registered U.S. Copyright Registration No. VA 1-805-490.

## PARTIES

3.      Plaintiff App Dynamic ehf is an Icelandic limited liability company with its headquarters and principal place of business in Kópavogur, Iceland.  Plaintiff is one of Iceland's successful startup computer software development businesses producing software applications for computers using Apple® and Microsoft® Windows® operating systems and Apple's iPhone®.  Plaintiff's software applications have been widely reviewed and praised:

- AirServer "clearly blows away all the competition";

- "Air Media Center is topping app sales in over 40 countries and continues to climb international charts"; and

- Remote HD is the "Best app in the App Store, control your pc effortlessly. Play music, use programs, turn off your pc from another room. Etc. Perfect interface and great control of the desktop view. Cannot recommend it enough."

4.      Upon information and belief, Defendant Erling Ormar Vignisson ("Defendant") is an Icelandic citizen who is currently residing in Sweden.

## JURISDICTION AND VENUE

5.      This is an action for declaratory judgment arising under the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act") and 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").  Thus, this court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Defendant pursuant to D.C. Code Ann. § 13-423(a)(1), the District of Columbia's long-arm statute.  Defendant intentionally and fraudulently registered a U.S. Copyright that allegedly covered the user interface of Plaintiff's software application with the U.S. Copyright Office located in the District of Columbia.  In

addition, the Court has personal jurisdiction over Defendant because Defendant has established minimum contacts with the forum, and the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

7.   Venue is proper in this district under 28 U.S.C. § 1391(c)(3).

## BACKGROUND

### THE PLAINTIFF

9.   Plaintiff App Dynamic ehf was founded on December 21, 2011, by Pratik Kumar ("Kumar") and his wife to develop new computer software applications and to commercialize computer software originally developed by App Dynamic slf, a predecessor business. App Dynamic slf assigned all of its rights concerning its computer software applications to Plaintiff App Dynamic ehf.

10.   App Dynamic slf was founded on July 29, 2010, by Kumar and his wife to develop new computer software applications and to commercialize computer software originally developed by Kumar, as an individual. Kumar assigned all of his rights concerning his computer software applications to App Dynamic slf.

### REMOTE JR™ AND REMOTE HD™

10.   After buying his first Apple® iPhone® in 2008, Kumar realized there were many opportunities to develop and sell software applications for the iPhone and he began to develop his first application.

11.   It was an innovative application called Remote Jr.™ that would let an iPhone owner remotely view the screen of their Apple Macintosh® computer and control the applications running on that computer. The application would come in two parts: Remote Jr.™, which runs on the iPhone, and Remote Helper™, which runs on the computer.

12.     Kumar wrote all of the software code, designed all of the graphical and user interface elements, and arranged those elements to create the final appearance (*i.e.*, the look and feel) of the user interface.  The first official version of the Remote Jr.™ application, version 1.3, was released on April 24, 2009.

13.     Because sales of the Remote Jr.™ application were good and it received positive reviews and good feedback, Kumar continued to develop the application.  The next version 2.0 contained many groundbreaking features like a dock, an application launcher, an application switcher and search.  Again, Kumar wrote all of the software code, designed all of the graphical and user interface elements, and arranged those elements to create the final appearance of the user interface.  Version 2.0 was released on June 26, 2009.

14.     With Remote Jr.™ growing in popularity, Kumar decided to upgrade the iPhone application's functions and appearance, improve marketing and improve e-mail support.

15.     About August 2009 in Iceland, Kumar hired Defendant to be responsible for non-programming and non-technical tasks related to Remote Jr.™, such as, marketing the product, updating the website, responding to customer issues, and creating updated graphical and user interface elements.  Importantly, the Parties agreed that Kumar would exclusively own any work created by Defendant related to Remote Jr. in the performance of his duties, along with any rights, such as copyright, to those works.  The Parties further agreed that Defendant would receive 20% of the net profit while he was diligently fulfilling his responsibilities. The Parties finalized this agreement with a handshake.

16.     Defendant had no prior iPhone design experience, and it showed in his first proposal for the user interface.  Kumar rejected Defendant's proposal because the look and feel of the user interface was rudimentary, and Defendant agreed that his work was not very good.

17.    Based on this experience, Kumar was forced to take a much more hands-on approach to the creation of the new graphical and user interface elements for Remote Jr.™.

18.    Kumar told Defendant the overall concept and context for the graphical and user interface elements, and then provided the specifications, including shape, texture, size, and color, for those elements. Kumar even provided Defendant with images and icons that inspired his overall concept.

19.    As Defendant follower Kumar's direction to "create" the elements, Defendant would submit them for Kumar's approval. Kumar would review, comment and propose revisions to each element. Defendant would then make Kumar's proposed revisions to each element.

20.    As an example, Kumar specified the overall concept, the layout, and the content of the 'About Screen' for Remote Jr.™ version 2.2. Additionally, because Remote Jr.™ would be released in full and lite versions, Kumar decided that certain elements of the 'About Screen' should be in yellow for the lite version and blue for the full version. Kumar instructed Defendant, among other changes, to make the "Diamond" logo yellow. Defendant followed Kumar's instructions and made the proposed changes.

21.    Eventually, Kumar approved all the graphical and user interface elements. Once the graphical and user interface elements were approved, Kumar arranged the elements to create the final appearance of the user interface. Defendant had no involvement with this step.

22.    In advance of the release of Remote Jr.™ Version 2.2, Defendant was instructed to create a fresh new website, including graphics and text. However, Defendant went on a five-week vacation and was still on vacation when Version 2.2 was released on November 10, 2009. The launch was a disaster. There was no new website, no marketing from Defendant, and hundreds of support e-mails that Kumar had to respond to because Defendant was on vacation.

5

23.     After Defendant returned from vacation, he was unreachable in December and Kumar had to continue updating the website and responding to customer support emails, which were two of Defendant's responsibilities.  In addition to handling Defendant's responsibilities, Kumar was adding new functions to Remote Jr.™ and expanding support to Microsoft Windows computers.

24.     As Kumar had been paying Defendant and not receiving their agreed upon services, Kumar spoke with Defendant about his lack of work and Defendant assured Kumar that he would focus on his responsibilities.

25.     In March 2010, Apple notified developers that if their iPhone® applications were rewritten to support the iPad® and submitted for approval before the iPad® launch that Apple would consider including the updated application in the iPad® launch.  This was a huge opportunity for Remote Jr.™.

26.     Kumar discussed this opportunity with Defendant and Defendant committed to delivering the needed graphics.  Kumar rewrote the application to support the iPad® and added new features.  Defendant was unreachable until the last day of the deadline, and then delivered very poor quality graphics that could not be used.  Thus, the application was not submitted in time for the launch, and the opportunity was lost.

27.     In April 2010, Kumar terminated the relationship based on Defendant's failure to perform his duties of marketing the product, updating the website, responding to customer issues, and creating updated graphics for the application.  As Defendant still possessed many of the master graphic and icon files, the Parties agreed that Defendant would deliver the master files and that Kumar would pay Defendant through the end of April 2010.  The Parties finalized this agreement with a handshake.

28.     Defendant reneged on his obligation to turn over the master files.

29.     Defendant, after failing to turn over the master files, wrote Kumar an e-mail claiming that he was a copyright owner of Kumar's Remote Jr.™ application and demanding Kumar provide additional compensation.

30.     In the meantime, Kumar decided that the next version of Remote Jr.™ should be launched as a new application because it was a universal application containing an upgraded version of the iPhone® application and an entirely new iPad® application.  Creating a universal application is also not an easy task because most of the existing iPhone® application must be rewritten in addition to writing a new iPad® application.  Kumar hired a new designer to replace all of the graphical and user interface elements with new elements that would function well on both the iPhone® and the iPad®. The new designer agreed that Kumar would exclusively own the copyright to any work created by the designer in the performance of his duties.  The new designer was given access to the graphics in versions 1, 2 and 3, and also given the underlying materials previously shared with Defendant.  The new designer created new graphical and user interface elements under Kumar's supervision.

31.     Kumar released the new application with the new user interface as Remote HD™ on June 1, 2010.

<u>DEFENDANT'S UNLAWFUL REGISTRATION OF U.S. COPYRIGHT</u>

32.     Upon information and belief, after being terminated, Defendant decided to register U.S. copyrights over the user interface of Plaintiff's Remote Jr.™ application.

33.     Defendant possessed the master files for the graphical and user interface elements that Kumar had been instrumental in designing because he had reneged on his obligation to turn them over.  Upon information and belief, more than a year after Remote Jr.™ v.2.2 had been

released, Defendant arranged those elements to create Defendant's own mock-up screens for Plaintiff's Remote Jr.™ application.

34.    On June 16, 2011, Defendant registered a U.S. Copyright covering the user interface of Plaintiff's Remote Jr. application.

35.    Defendant's U.S. Copyright registration was entitled "Remote Jr. – iPhone Application Design" and it claimed nine works:  (1) Main Control Screen, (2) Main Control Screen: Help Bubbles, (3) Flipside: Other control functions, (4) Remote View, (5) Remote View: Flipstrip (other control functions), (6) Remote View: Flipstrip and Overlaid Controls, (7) Remote View: Overlaid Controls, (8) About-screen, and (9) Remote Jr. Logo (Exhibit 1 – registration).

36.    On the U.S. Copyright Registration form, Defendant claimed that he was the copyright claimant of the works being registered.

37.    On the U.S. Copyright Registration Form, Defendant did not limit his copyright claim to the works being registered in any fashion.

38.    On the U.S. Copyright Registration Form, Defendant claimed that the date of first publication occurred on November 10, 2009, which is the same date that Remote Jr.™ v2.2 was released.

39.    In support of this registration, Defendant submitted deposit copies of the works (Exhibit 2 – deposit).  Upon information and belief, Defendant submitted twenty-one (21) of his recently created mock-up screens.

40.    Upon information and belief, Defendant also submitted three screens containing work that had been created and modified by Kumar's instructions.  Two of those screens are "About Screens" that Kumar was instrumental in creating (*see supra*, paragraph 20).  Kumar had told Defendant the overall concept for these About Screens, described the elements on the About

Screens, provided the content and the arrangement of the content, proposed revisions to drafts that Defendant implemented, and finally approved the final About Screens.

41. Additionally, Kumar was instrumental in creating the "Diamond" logo. Kumar proposed the concept of using a diamond shape as the logo, sketched out the original shape of the diamond, suggested using the colors blue and yellow, and proposed revisions to the diamond shape. These suggestions and proposals were implemented by the Defendant, and approved by Kumar.

42. Finally, Defendant signed the U.S. Copyright Registration Form and certified that all the statements made by Defendant were correct.

43. Defendant intended the U.S. Copyright Office to rely upon his fraudulent, intentionally misleading statements, and the U.S. Copyright Office did rely upon Defendant's submission and certification to grant Registration No. VA 1-805-490 to Defendant.

DEFENDANT'S UNLAWFUL ENFORCEMENT OF THE U.S. COPYRIGHT

44. On April 26, 2012, Defendant sent Apple, Inc. a cease and desist letter demanding that Apple stop the sales of Remote HD and provide a record of all sales information. Defendant stated that it would take further action against Apple unless Apple capitulated to Defendant's demands.

45. In the letter, Defendant cited and attached U.S. Copyright Registration No. VA 1-805-490 to justify his demands to Apple.

46. Apple forwarded Defendant's letter to Plaintiff. Plaintiff was forced to hire an attorney to respond to Defendant's false accusations. Plaintiff responded that Defendant "did not obtain any intellectual property rights" to Plaintiff's application, and that Plaintiff "holds all intellectual property rights" related to its application.

47.     Upon information and belief, Defendant took no further actions against Apple.

DEFENDANT'S UNLAWFUL ENFORCEMENT OF THE U.S. COPYRIGHT

48.     On March 12, 2014, Defendant sued Plaintiff and Kumar in the District Court of Reykjaness, Iceland for allegedly infringing Defendant's U.S. copyright over the user interface of Remote Jr.

49.     In that case, Defendant has cited the grant of U.S. Copyright Registration No. VA 1-805-490 as proof that he has a valid copyright interest in Remote Jr.™.

## COUNT I
## BREACH OF CONTRACT

50.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

51.     In August 2009 in Iceland, Kumar and Defendant verbally agreed that Kumar would exclusively own the copyright to any work created by Defendant related to Remote Jr.™ in the performance of his duties.  The Parties finalized this agreement with a handshake.

52.     Under the governing law of Iceland, a verbal agreement is binding if accompanied by a hand shake.

53.     During the term of their agreement, Plaintiff substantially performed his obligations to Defendant, including paying Defendant.

54.     Defendant breached the August 2009 agreement with Plaintiff concerning copyright ownership when Defendant refused to turn over the master graphic and icon files in his possession after being terminated.  Defendant also breached the August 2009 agreement when Defendant claimed to be a copyright owner of the works that he had created for Remote Jr.™ in the performance of his duties.  Defendant further breached their August 2009 agreement when

Defendant registered a copyright in his name with the U.S. Copyright Office over the user interface of Remote Jr.™

55.     As a result of Defendant's breaches, Plaintiff has been damaged by Defendant's actions.  Plaintiff has spent substantial time, money and resources responding to Defendant's allegations based on Defendant's breaches of the August 2009 agreement, including the preparation and filing of this lawsuit.

**COUNT II**
**DECLARATORY JUDGMENT – COPYRIGHT OWNERSHIP**

56.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

57.     In August 2009, Kumar and Defendant agreed that Kumar would exclusively own the copyright to any work created by Defendant related to Remote Jr.™ in the performance of his duties.   The Parties finalized this agreement with a handshake.

58.     Under the governing law of Iceland, a verbal agreement is binding if accompanied by a hand shake.

59.     Defendant breached his agreement with Plaintiff concerning copyright ownership when he registered a copyright with the U.S. Copyright Office over the user interface of Remote Jr.™.

60.     There is a real and actual controversy between Plaintiff and Defendant regarding ownership of the works claimed in U.S. Copyright Registration No. VA 1-805-490, as demonstrated by Defendant's attempt to tortiously interfere with Plaintiff's business relationship with Apple, and by Defendant's current, baseless lawsuit in Iceland.

61.     The controversy between Plaintiff and Defendant is real and substantial and demands specific relief through a decree of a conclusive character.  Moreover, Plaintiff has been

damaged by Defendant's actions. Plaintiff has spent substantial time, money and resources responding to Defendant's allegations based on Defendant's fraudulent ownership claim, including responding to Apple, Inc. and the preparation and filing of this lawsuit.

62.     The Plaintiff is entitled to declaratory judgment that it is the proper copyright owner of the works claimed in U.S. Copyright Registration No. VA 1-805-490.

## COUNT III
## DECLARATORY JUDGMENT – INVALID REGISTRATION

63.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

64.     There is a real and actual controversy between Plaintiff and Defendant regarding whether the copyright registration is invalid.

65.     To be a valid registration, the deposit copy must contain "two complete copies ... of the best edition" of the work to be copyrighted as it existed when it was first published.

66.     The deposit copies submitted by Defendant with the U.S. Copyright Registration No. VA 1-805-490 are not best editions. They are mock-up screens that do not show Remote Jr.™ v2.2 as it existed when it was first published.

67.     The controversy between Plaintiff and Defendant is real and substantial and demands specific relief through a decree of a conclusive character.

68.     The Plaintiff is entitled to declaratory judgment that U.S. Copyright Registration No. VA 1-805-490 is invalid.

## COUNT IV
## DECLARATORY JUDGMENT – FRAUD UPON THE U.S. COPYRIGHT OFFICE

69.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

70.     There is a real and actual controversy between Plaintiff and Defendant regarding how Defendant obtained U.S. Copyright Registration No. VA 1-805-490.

71.     The U.S. Copyright Office will register any copyright that satisfies the procedural requirements and contains a deposit constituting copyrightable subject matter. 17 U.S.C. § 410.

72.     Defendant intentionally falsified information on his registration for a U.S. Copyright. Defendant lied when he claimed that he was the copyright claimant of the works being registered, when he did not limit his claim to the works being registered in any fashion, when he submitted his deposit copies as meeting the best edition requirements, and when he certified that the statements were correct.

73.     The controversy between Plaintiff and Defendant is real and substantial, and demands specific relief through a decree of a conclusive character.

74.     The Plaintiff is entitled to declaratory judgment that Defendant committed fraud upon the U.S. Copyright Office because Defendant knowingly submitted material false information to the U.S. Copyright Office intending them to rely upon the false information, the U.S. Copyright Office did rely upon that information to grant the U.S. Copyright Registration No. VA 1-805-490, and that grant has caused Plaintiff irreparable harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.     For an award of compensatory damages in an amount, sufficient to compensate Plaintiff for all the time, money and resources expended responding to Defendant's allegations, to be proved during trial;

B.     For a declaration that Kumar, and thus Plaintiff, is the sole copyright owner of the graphical and user interface elements claimed in U.S. Copyright Registration Number VA 1-805-490;

C.     For a declaration that U.S. Copyright Registration Number VA 1-805-490 is invalid;

D.     For a declaration that Defendant committed fraud upon the U.S. Copyright Office in obtaining U.S. Copyright Registration Number VA 1-805-490;

E.     For costs of suit incurred herein, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505; and

F.     For such other and further relief as the Court may deem just and proper.


Respectfully submitted,

Dated: September 2, 2014

Cathy A. Hinger, Esq. (D.C. Bar No. 473697)
Womble Carlyle Sandridge & Rice LLP
1200 Nineteenth St., N.W.
Suite 500
Washington, DC 20036
Tel: (202) 857-4489
Fax: (202) 261-0029
Email: chinger@wcsr.com

*To seek admission pro hac vice*:
Henry Park, Esq.
Law Office of Henry Park, PC
616 Corporate Way, Suite 2-4001
Valley Cottage, NY 10989
Tel: (646) 480-0450
Fax: (206) 203-4073
Email: hpark@henryparklaw.com

*Attorneys for Plaintiff*