UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APP DYNAMIC EHF,

Plaintiff,

v.

ERLING ORMAR VIGNISSON,

Defendant.

Civil Action No. 14-1504 (JEB)

**MEMORANDUM OPINION**

While this case arises from an otherwise commonplace business relationship gone sour, the parties are not the typical ones to enter this Courthouse's doors. On one side stands Plaintiff App Dynamic ehf, an Icelandic computer-startup company; on the other is Defendant Erling Ormar Vignisson, a former employee and an Icelandic citizen living in Sweden. Their falling out has precipitated this suit alleging, *inter alia*, breach of contract, an invalid U.S. copyright registration, and fraud on the U.S. Copyright Office. In moving to dismiss, Defendant raises three different grounds for jettisoning the case: lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim. The Court need look no farther than the first to grant the Motion.

I.      Background

According to the Complaint, which the Court must credit at this stage, App Dynamic was founded by Pratik Kumar and his wife as an Icelandic computer-software-development company that produces applications for both Apple and Microsoft operating systems. See Compl., ¶¶ 3, 9. In 2008, Kumar began to develop his first application, called Remote Jr. See id., ¶¶ 10-11. The

initial version, 1.3, was released in April 2009; Kumar continued to develop the application and released a second version, 2.0, two months later.  Id., ¶¶ 12-13.

In August of 2009, he hired Vignisson to handle tasks related to Remote Jr., such as marketing, updating website content, providing customer services, and creating updated graphics and user-interface elements.  Id., ¶ 15.  A third version, 2.2, was subsequently released during Vignisson's employment on November 10, 2009.  Id., ¶ 22.  The two men "agreed that Kumar would exclusively own any work created by Defendant related to Remote Jr.™ in performance of his duties, along with any rights, such as copyright, to those works."  Id., ¶ 15.  Defendant would receive 20% of the profits as compensation, and this agreement was finalized with a handshake.  Id.  Such memorialization, impressively, seems to be the rule in Iceland.

In April 2010, when Vignisson's work performance did not meet Kumar's standards, Defendant was fired.  Id., ¶ 27.  Kumar requested that Vignisson deliver the master graphic and icon files of the app in return for payment through the end of April, and the parties agreed to this with another good, old-fashioned handshake.  Id.  Defendant, however, did not turn over the master files and instead wrote Kumar an email claiming that he Vignisson was a copyright owner of Remote Jr. and demanding additional compensation.  Id., ¶¶ 28-29.

On June 16, 2011, using these master files, Vignisson registered U.S. Copyright Registration No. VA1-805-490 entitled "Remote Jr. – iPhone Application Design."  Id., ¶¶ 33-35, 43.  On the registration form, Defendant claimed that he was the copyright owner, did not limit his claim, listed the date of first publication as the date that version 2.2 was released, and certified that all statements were correct.  Id., ¶¶ 36-38, 42.

On April 26, 2012, Vignisson next sent Apple a cease-and-desist letter, demanding that it stop the sales of Remote HD, a later version of the application that Kumar had developed.  Id., ¶¶

30-31, 44. He threatened further action against the company if it did not comply and attached his new U.S. copyright registration. Id., ¶¶ 44-45. In March 2014, Vignisson sued Plaintiff and Kumar in the District Court of Reykjaness, Iceland, for allegedly infringing Defendant's new U.S. copyright over Remote Jr. Id., ¶ 48. The suit was dismissed on December 17, 2014. See Opp., Exh. J (Verdict of the District of Reykjanes in case no. E330/2014) at 9.

Plaintiff has responded by filing this action, which alleges the following:

Count I: Breach of contract relating to the oral agreements wherein Defendant assigned copyright interests to Kumar. See Compl., ¶ 54.

Count II: Declaratory judgment that Plaintiff is the copyright owner of the works claimed in U.S. Copyright Registration No. VA 1-805-490. Id., ¶ 62.

Count III: Declaratory judgment that such U.S. copyright registration is invalid. Id., ¶¶ 65-66, 68.

Count IV: Declaratory judgment that Defendant committed fraud upon the U.S. Copyright Office when he knowingly falsified material information on his application, which he intended the office to rely upon in granting the copyright registration. Id., ¶ 74.

Vignisson has now filed a Motion to Dismiss. In a rather unorthodox practice, which the Court does not endorse, he filed three separate Memoranda supporting his Motion, one making each of the following arguments: (1) the Court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) it further lacks personal jurisdiction over Defendant under Rule 12(b)(2); and (3) Count II of the Complaint does not state a claim upon which relief may be granted under Rule 12(b)(6).

**II.     Legal Standard**

As the Court addresses only the question of personal jurisdiction, it will articulate just that standard.  Under Rule 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over him.  Personal jurisdiction determines the court's "authority over the parties . . . , so that the court's decision will bind them."  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999).  The plaintiff bears the burden of establishing that such jurisdiction exists. See FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008).  In deciding whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the court resolves factual discrepancies in favor of the plaintiff.  See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).  When personal jurisdiction is challenged, "the district court has considerable procedural leeway in choosing a methodology for deciding the motion."  5B Charles A. Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 1351 (3d ed. 2004).  The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing.  See id.

**III.    Analysis**

In analyzing the present Motion, the Court first sets forth some general principles regarding personal jurisdiction and then considers the government-contacts exception.  After concluding that it has no jurisdiction under the facts alleged, the Court subsequently addresses whether jurisdictional discovery is appropriate and ends by examining the consequences of a finding of no jurisdiction here.

    A. Personal Jurisdiction

Personal jurisdiction may take the form of general or specific jurisdiction.  General jurisdiction exists where a non-resident defendant maintains sufficiently systematic and

continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim in the particular suit. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). In this case, Plaintiff makes no allegation (in either the Complaint or its Opposition) that Vignisson has had any "systematic and continuous contacts" with this forum. This Court, therefore, cannot exercise general jurisdiction over him.

This leaves the possibility of specific jurisdiction. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted). In other words, specific jurisdiction exists where a claim arises out of the non-resident defendant's contacts with the forum. See Helicopteros, 466 U.S. at 414 n.8; see also United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995). "A plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute and does not violate due process." FC Inv. Grp., 529 F.3d at 1094-95 (internal citation omitted).

It turns out, however, that the Court need not weigh the due-process implications here because resolution of the jurisdictional question hinges on the District's long-arm statute. That statute, which has been given an "'expansive interpretation'" in the District of Columbia, Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004) (citation omitted), enables a court to exercise personal jurisdiction over a non-resident defendant where a claim arises from his transacting any business in the District. See D.C. Code § 13-423(a)(1). Plaintiff argues that Vignisson "transact[ed] business" here by "intentionally and fraudulently register[ing] a U.S. Copyright . . . with the U.S. Copyright Office located in the District of Columbia." Compl., ¶ 6. This, App Dynamic concludes, subjects him to jurisdiction here.

B. <u>Government-Contacts Exception</u>

Defendant does not deny that his copyright registration constitutes a "contact" with the District of Columbia, but he nonetheless contends that an exception to the transacting-business prong of the District's long-arm statute protects him. He cites the so-called "government-contacts principle," which provides that entry into the District by non-residents for the sole purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction. See <u>Alkanani v. Aegis Def. Srvs. LLC</u>, 976 F. Supp. 2d 13, 25 (D.D.C. 2014); <u>Freiman v. Lazur</u>, 925 F. Supp. 14, 24 (D.D.C. 1996) (citing <u>Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.</u>, 355 A.2d 808 (D.C. 1976)). This exception derives from the "unique character of the District as the seat of the national government," and it recognizes that there is a "correlative need for unfettered access to federal departments and agencies for the entire national citizenry." <u>Envtl. Research</u>, 355 A.2d at 813. To rule otherwise "would pose a threat to free public participation in government" and "would threaten to convert the District of Columbia into a national judicial forum." <u>Id.</u>

Plaintiff rejoins that the government-contacts exception does not apply here because "fraudulent petitions to the federal government are not protected by the government contacts exception." Opp. at 16. Although such an "exception to the exception" does exist, it is considerably narrower than App Dynamic believes. In fact, in its most recent articulation by the D.C. Court of Appeals, the fraud exception is limited to those petitions that use "the government as an instrumentality of fraud, and thereby cause[] unwarranted government action against another . . . ." <u>Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.</u>, 35 A.3d 1127, 1134 (D.C. 2012) (<u>Companhia II</u>) (internal citations omitted). The background to this D.C.C.A. opinion may prove useful at this point.

6

Companhia originated as a federal action brought here by Brazilian corporations against American corporations based outside of the District of Columbia.  See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp., 640 F. 3d 369, 370 (D.C. Cir. 2011) (Companhia I).  The Brazilian plaintiffs alleged that the American defendants had submitted fraudulent petitions to the U.S. International Trade Commission, located here in Washington, which had led to the ITC's imposing duties on the Brazilian plaintiffs' products.  Id.  The district court dismissed the plaintiffs' suit for lack of personal jurisdiction under the government-contacts exception.  Id.

On appeal, the D.C. Circuit acknowledged that the "scope of the government contacts exception is unsettled [ ] under the D.C. Court of Appeals' precedent."  Id. at 371-72.  The Circuit also noted that since the D.C.C.A. "is of course the controlling authority for interpretation of D.C. law, and that court promulgated the government contacts exception," it was "appropriate to certify to the D.C.C.A." the following question:

> Under District of Columbia law, does a petition sent to a federal government agency in the District provide a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff?

Id. at 371.

The D.C.C.A. answered the certified question in the affirmative.  The exception it set forth is a narrow one: a non-resident "who uses the government as an instrumentality of fraud, and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception."  Companhia II, 35 A.3d at 1134 (emphasis added).  Put another way, those who enter the District "to fraudulently induce unwarranted government action against others, and succeed in doing so," will not "be able to avoid defending their actions in this

jurisdiction by cloaking themselves in the government contacts doctrine." Id. at 1133.  It is noteworthy, for our purposes, that the D.C.C.A. emphasized the provoking of government action against another; it did not premise jurisdiction on the mere filing of a fraudulent petition.

Reading the fraud exception in this circumscribed manner is in keeping with that court's reasoning.  In laying the foundation of the doctrine, it noted the "legitimate concern that recognizing a fraud exception to the government contacts principle could expose the District to an 'unrelenting wave' of litigation . . . largely negat[ing] the government contacts exception." Id. at 1134 (citing Nichols, 783 F. Supp. at 243, and Companhia I, 640 F.3d at 373).  The court thus emphasized that "[c]ases in which this fraud exception applies should be rare indeed . . . . It will not be sufficient to allege that the petitioner presented an unbalanced view of the issue or even that he made a false statement." Id.  In addition, "[u]nsupported allegations that a defendant has fraudulently induced unwarranted government action against the plaintiff will not be sufficient to invoke the fraud exception." Id. at 1134-35 (citing Nichols, 783 F. Supp. at 243-44).

Courts in this district have followed this mandate, holding that the contours of this "very narrow fraud exception" are "crystal clear" in requiring both using the government as an instrumentality of fraud and thereby causing "unwarranted government action against another." Morgan v. Richmond Sch. of Health and Tech., Inc., 857 F. Supp. 2d 104, 109 (D.D.C. 2012) (holding fraud exception to government-contacts doctrine inapplicable where no allegations that government agency committed any actions against plaintiff); see also Shaheen v. Smith, 994 F. Supp. 2d 77, 86 (D.D.C. 2013) (holding narrow fraud exception inapplicable because government agency – the SEC – did not take any action against plaintiff as result of defendants' actions).

App Dynamic nonetheless maintains that this case fits within the fraud exception because Vignisson made multiple misrepresentations to the "Copyright Office with the goal of ensuring that the Copyright Office issued a copyright registration to Defendant in a form that Defendant could use against Plaintiff." Opp. at 18. After the Office registered Vignisson's copyright application, moreover, he "began to affirmatively wield the copyright in attempts to harm Plaintiff and Plaintiff's business relationships." Id. at 19.

This is not enough. The fraud exception is limited to petitions to a federal government agency that fraudulently induce "unwarranted government action against the plaintiff." Companhia II, 35 A.3d at 1130, 1134-35 (emphasis added); see also Companhia I, 640 F.3d at 371. The fatal flaw here – despite Defendant's allegedly unbecoming conduct – is that there is nothing in the record that suggests that the U.S. Copyright Office took any unwarranted action against Plaintiff. Had the Office, for example, imposed a duty upon it for the Remote HD app or forced Apple to stop sales of the app, this might be a different situation. In the instant case, however, the only actions taken against Plaintiff thus far have been by Defendant; the Copyright Office has done no more than register the copyright. App Dynamic's allegation of fraud, therefore, does not fall within the exception announced in Companhia, and the government-contacts doctrine applies to bar personal jurisdiction.

### C. Jurisdictional Discovery

Plaintiff alternatively argues that if the Court is not inclined to find personal jurisdiction, it should nonetheless permit jurisdictional discovery. See Opp. at 20-21. App Dynamic generally cites EV-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996), to argue that "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to

9

reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." Id. at 676.

"It is well established that the 'district court has broad discretion in its resolution of [jurisdictional] discovery problems.'" FC Inv. Grp., 529 F.3d at 1093 (quoting Naartex, 722 F.2d at 788). The standard for permitting jurisdictional discovery is "quite liberal." Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003). This Circuit has held that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." GTE New Media Srvs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000).

"Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction." Acker v. Royal Merchant Bank & Finance Co., No. 98-392, 1999 WL 1273476, at *5 (D.D.C. Feb. 10, 1999) (citing Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998)). "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." Caribbean Broad, 148 F.3d at 1090. "[M]ere conjecture or speculation" that discovery could lead to personal jurisdiction is insufficient for a court to permit it. See FC Inv. Grp., 529 F.3d at 1094. "Therefore, a plaintiff must include some facts about what additional discovery could produce." Shaheen, 994 F. Supp. 2d at 89. "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" Atlantigas Corp. v. Nisource, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (citing COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524 n.4 (D.D.C. 1995)).

In this case, App Dynamic contends it is entitled to discovery because "Defendant has traveled many times to the U.S." Opp. at 20-21. Kumar admits, however, that he "do[es] not know specifically where in the U.S. [Defendant] has been, or what he has done while there." Opp., Exh. A (Declaration of Pratik Kumar), ¶ 4. Vignisson responds that this hardly establishes a good-faith belief that, as a resident of Sweden, he "stealthily has the type of continuous and systematic" presence in the District necessary for general jurisdiction. See Reply at 10-11 (citing Alkanani, 976 F. Supp. at 21. Defendant further argues that App Dynamic has no basis to believe that he had other contacts with the District regarding this intellectual property – beyond the aforementioned communications with the Copyright Office – such that "Plaintiff's claims can be said to arise out of such contacts as required for specific jurisdiction." Id. (emphasis added). Additionally, Defendant submitted a second declaration acknowledging studies in Florida and travel to the U.S. on vacation and for conferences, but denying travel to the District of Columbia and visits regarding Remote Jr. See Reply, Exh. A (Second Declaration of Erling Vignisson), ¶¶ 6-8.

Vignisson's position carries the day since App Dynamic has not demonstrated how discovery would help establish jurisdiction. Plaintiff has not alleged a single potential contact or pointed to any fact that, if discovered, would "indicate that a court in the District of Columbia might . . . assert jurisdiction" over Vignisson. Caribbean Broad, 148 F.3d at 1089. Its request to seek "jurisdictional discovery of other, unalleged contacts between [Defendant] and the District of Columbia" is "based on mere conjecture or speculation." NBC-USA Housing, Inc., Twenty-Six v. Donovan, 741 F. Supp. 2d 55, 61 (D.D.C. 2010) (citing FC Inv. Grp., 529 F.3d at 1093). Requesting jurisdictional discovery because Plaintiff believes Defendant has traveled to this country "many times" does not constitute the required "detailed showing of what discovery it

wishes to conduct or what result it thinks such discovery would produce." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000). Travel "many times" to this country includes possible travel to not only the District of Columbia, but also to 50 states and additional territories, spanning almost 4 million square miles.

Plaintiff rejoins by citing GTE New Media, where the court permitted jurisdictional discovery even though the record before the court was "plainly inadequate," and there was "absolutely no merit to [the plaintiff's] bold claim" of jurisdiction. 199 F.3d at 1351-52. Such reliance is misplaced. Although the court permitted discovery despite an "inadequate" record, the plaintiffs there at least cited what specific information and facts they would target to establish jurisdiction. Id. at 1349-51. Discovery was also permitted because there existed confusion regarding the actions of the parent company versus those of its subsidiaries, and jurisdictional discovery could help analyze which company made what contacts and where. Id. at 1352.

Plaintiff here, in contrast, offers no specifics of any facts that could establish jurisdiction. Cf., e.g., Diamond Chem., 268 F. Supp. 2d at 15-16 (allowing discovery because plaintiffs pointed to specific activity of companies that would show managerial control, flow of funds, and knowledge of and participation in conspiracy); Davis v. Grant Park Nursing Home, LP, 639 F. Supp. 2d 60, 74-75 (D.D.C. 2009) (permitting jurisdictional discovery of specific documents that would reveal alleged exertion of control between defendant corporations); In re Fort Totten Metrorail Cases, 756 F. Supp. 2d 132, 138 (D.D.C. 2010) (permitting jurisdictional discovery of additional information on sales data and defendant's knowledge about use of its products).

Although Plaintiff asserts that jurisdictional discovery should be "freely given," its request is insufficient and constitutes nothing more than a "speculative fishing expedition."

Shaheen, 994 F. Supp. 2d at 89. As this Circuit recently held, "To nonetheless allow Plaintiff to conduct jurisdictional discovery would require this Court to construe this Circuit's admittedly liberal jurisdictional discovery standard in such a way as to render it meaningless." NBC-USA, 741 F. Supp. 2d at 61. This Court thus declines the request.

> D. Consequences

Although App Dynamic never raised the issue, the Court last addresses the consequences of its ruling. Assuming *arguendo* that no personal jurisdiction exists over Vignisson anywhere in the United States, does that mean that no U.S. court could ever review the validity of a U.S. Copyright Office registration procured by a fraudulent filing? As it turns out, this is the wrong question. The authority to invalidate or cancel Defendant's copyright registration lies with the Copyright Office itself.

The Register of Copyrights is vested with the exclusive and comprehensive authority to set regulations consistent with copyright statutes. See 17 U.S.C. § 701(a) ("All administrative functions and duties under this title, except as otherwise specified, are the responsibility of the Register of Copyrights . . . ."); 17 U.S.C. § 702 ("The Register of Copyrights is authorized to establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title."). Title 37 C.F.R. § 201, *et seq.* defines the procedures to cancel a copyright, and nowhere in those regulations is judicial cancellation discussed. It appears, instead, that cancellations are limited to the Copyright Office alone. See 37 C.F.R. § 201.7(a) ("Cancellation is an action taken by the Copyright Office whereby [] the registration is eliminated on the ground that the registration is invalid under the applicable law and regulations . . . .").

Caselaw on this issue is scarce, but the Ninth Circuit has also held:

> [T]here is an administrative process for cancellation, albeit ill-defined, in the Copyright Office. Referral . . . is therefore appropriate for the Register of Copyrights to determine to what extent administrative cancellation remedies are available to third parties who seek registration cancellation. In sum, this case requires the resolution of an issue within the jurisdiction of an administrative body exercising statutory and comprehensive regulatory authority over a national activity that requires expertise and uniformity in administration.

Syntek Seminconductor Co., Ltd. v. Microchip Tech. Inc., 307 F.3d 775, 782 (9th Cir. 2002).

Additionally, the Third Circuit recently held that the district court had erred in ordering a cancellation of a copyright registration "because there is no statutory indication whatsoever that courts have such authority," and, indeed, "there is substantial indication that courts do not have such authority." Brownstein v. Lindsay, 742 F.3d 55, 75 (3d Cir. 2014). The Third Circuit, however, did emphasize that "[t]his does not mean that courts have no place in the cancellation process and that aggrieved parties are without recourse to the courts"; although "courts may not directly cancel copyright registrations, courts have an oversight role in the administrative functions of the Copyright Office." Id. at 76. "Thus, aggrieved parties may challenge an unfavorable decision by the Copyright Office in a cancellation matter by challenging its decision in court under the APA." Id.

The Third Circuit further noted that "[i]t goes without saying that courts are authorized to police copyright registrations through authorship and infringement claims" because "a registration does not secure or create a copyright, as a right, or guarantee success on the merits of a claim . . . ." Id., at 76-77. Additionally, the court made clear, it was

> in no way holding that courts are incapable of invaliding underlying copyrights. While the two concepts are undoubtedly related, the distinction matters. Holding that federal courts have the authority to cancel registrations would essentially be declaring that the judicial branch has the authority to order a legislative branch agency that is not a party to the litigation to take an affirmative action . . . .

14

> Courts have no authority to cancel copyright registrations because that authority resides exclusively with the Copyright Office.

<u>Id.</u> at 77.

Plaintiff may thus pursue its dispute regarding registration through the Copyright Office. And, of course, an Icelandic court would presumably have the authority to determine the validity of App Dynamic's contract and copyright claims. Plaintiff, therefore, may seek appropriate relief in the proper fora should it so desire.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss for lack of personal jurisdiction and denies Plaintiff's request for jurisdictional discovery.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  April 10, 2015